UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE MITCHEL GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 1:08-cv-629-WTL-TAB |
| ) | |
| LENOIR E. ZAISER, et al., ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON MCDERMOTT, INC.'S MOTION TO DISMISS

This cause is before the Court on the motion to dismiss for lack of personal jurisdiction filed by Defendant McDermott, Inc. ("McDermott"), and the motion of Plaintiff The Mitchel Group, Inc. ("Mitchel") seeking to submit supplemental evidence in opposition to the motion to dismiss. Both motions are fully briefed and the Court, being duly advised, **GRANTS** Mitchel's motion and, having considered the supplemental evidence and McDermott's arguments with regard to it, **DENIES** McDermott's motion for the reasons set forth below.

This case arises out of the environmental contamination of a piece of property in Indianapolis, Indiana ("the Facility"). The details regarding the history of the use and ownership of the Facility are largely irrelevant to the instant motions. Suffice it to say that Mitchel is the current owner of the Facility and, *inter alia*, seeks in this action, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., to recover from the Defendants–most of whom are former owners or operators of the Facility or successors thereto–the costs it has incurred in remediating the hazardous substances that have contaminated the Facility.

In its motion to dismiss, McDermott asserts that this Court lacks personal jurisdiction

over it. When a defendant challenges the Court's personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, a motion to dismiss is resolved without an evidentiary hearing,[1] the plaintiff's burden is satisfied if it makes a prima facie case of personal jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (citations omitted). The record with regard to personal jurisdiction must be considered in its entirety, and all reasonable inferences must be drawn in favor of the plaintiff. *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006).

Where, as here, there is no applicable federal statute providing for nationwide service of process, a federal district court may exercise personal jurisdiction over a defendant if a court of the state in which it sits would have such jurisdiction. Fed.R.Civ.P. 4(k)(1)(A). The Indiana long-arm statute, found at Indiana Trial Rule 4.4(A), provides for jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States"; in other words, Indiana permits the exercise of personal jurisdiction to the full extent permitted by the Federal Due Process Clause. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006).

There are two forms of personal jurisdiction that a court may exercise over a non-resident defendant, "general" and "specific" jurisdiction, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); inasmuch as Mitchel concedes the lack of general jurisdiction, only

---

[1] Neither party has requested a hearing in this case.

specific jurisdiction is at issue in this case.  Specific jurisdiction is applicable when the basis of the suit "arises out of or is related to" the defendant's contacts with the forum state.  *Jennings*, 383 F.3d at 549.   "To establish specific jurisdiction under the familiar minimum contacts analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction over that defendant would comport with traditional notions of fair play and substantial justice." *Id.* (citations and internal quotation marks omitted).

As already noted, Mitchel alleges that most of the Defendants were at one time owners of the Facility or the successor-in-interest to one of the former owners.  Its allegations with regard to McDermott, however, do not include an ownership interest in the Facility.  Rather, Mitchel alleges that one of the previous owners, The Babcock & Wilcox Companies ("B&W")[2], is a wholly-owned subsidiary of McDermott.  In actuality, the relationship between the two corporations is not that of parent and subsidiary; rather, both McDermott and B&W are subsidiaries of another corporation, McDermott International, Inc.  *See* Affidavit of Robert Stumpf.  Regardless, even if  McDermott were the parent of B&W, that alone clearly would not be a sufficient basis for the exercise of personal jurisdiction over McDermott, *see Purdue Research Foundation,* 338 F.3d at 788 (jurisdictional contacts of subsidiary are not imputed to parent absent special circumstances), and Mitchel does not so argue.  Rather, Mitchel alleges that McDermott's own involvement with the Facility during the time B&W owned it was such that McDermott is subject to being haled into court in Indiana in this case involving the Facility.

---

[2]B&W, which is now known as Babcock & Wilcox Power Generation Group, Inc., has not been named as a defendant by Mitchel, presumably because it filed for bankruptcy in February 2000.

    Specifically, in its amended complaint Mitchel alleges that McDermott

> operated the Facility and/or, in addition, actively participated in and exercised control over the waste management functions at the Facility, including, but not limited to:
>
>     a.    hiring one or more Indiana environmental consultants to perform environmental work at the Facility;
>     b.    paying the invoices of one or more Indiana environmental consultants who performed work at the Facility;
>     c.    directing one or more environmental consultants to perform environmental investigatory or remediation work at the Facility; and
>     d.    directing the Facility and/or training the Facility's employees regarding waste management policies and procedures.

Amended Complaint at ¶ 39. In support of these allegations, Mitchel has submitted numerous documents. The import of some of the documents is simply that third parties blurred the distinction between B&W and its affiliated company, McDermott, or that the two corporations shared a letterhead, and the Court finds those documents to be of minimal, if any, relevance.[3] However, other documents support Mitchel's assertion that McDermott played an active role in environmental matters at the Facility.

    First, Exhibit K is a Phase I environmental assessment of the Facility dated May 1996 which indicates on its face that it was prepared for McDermott; a July 1996 Phase II environmental assessment and an August 1996 Phase II-B environmental assessment also so indicate. *See* Exhibits L and M. Similarly, Exhibit R contains an April 1997 Health and Safety Plan for those investigating the environmental condition of the Facility; this document also indicates that it was prepared for McDermott. Exhibit S is an August 1997 technical

---

[3]To the extent that Mitchel suggests that these documents demonstrate that McDermott and B&W failed to maintain corporate formalities such that they should be treated as one legal entity, that suggestion is without merit.

memorandum regarding a soil investigation by a different environmental firm which also indicates that it was prepared for McDermott.  In October 1997, a third environmental firm sent an environmental report to Jack Arnold of McDermott; the cover letter indicates that the firm had conducted demolition activities at the Facility and prepared a report regarding those activities for McDermott.  *See* Exhibit T.   Arnold was also the addressee of a November 1997 environmental report regarding soil sampling that was done following the demolition.  *See* Exhibit U.  Finally, Exhibits P, V and Y demonstrate that McDermott communicated directly with the Indiana Department of Environmental Management regarding the Facility.

McDermott argues that most of these documents can be explained by various third parties simply not understanding the distinction between parents and subsidiaries (or two subsidiaries of the same parent).  That might be the case with regard to documents on which a third party has listed McDermott as the owner or operator of the Facility, but the documents discussed above show that the third parties were preparing their environmental reports for McDermott and sending them directly to McDermott. Viewing these documents[4] in the light most favorable to Mitchel, they support Mitchel's assertion that McDermott was directly involved in environmental matters at the Facility.

As McDermott points out, most of the documents discussed above were created after the Facility was no longer being operated by B&W and thus do not prove that McDermott directed or participated in operations at the Facility.  However, some of the supplemental exhibits submitted by Mitchel demonstrate that McDermott's involvement in the environmental affairs of

---

[4]The Court notes that there are numerous documents contained in Mitchel's supplemental exhibits that are not discussed here because they fall into the same categories as the documents that are discussed and therefore are simply cumulative.

the Facility began in 1987, when B&W first acquired the Facility. *See* Supplemental Exhibit G (environmental survey by consulting company sent to McDermott's Manager of Corporate Safety and Health in January 1987; body of report suggests that McDermott was paying for the consultant's services); Supplemental Exhibit H (Waste Profile Record for Facility authored by McDermott Director of Corporate Environmental Affairs R.D. Hafner in 1989); Supplemental Exhibit T (1987 Hazardous Waste Program for the Facility prepared by McDermott's Corporate Health and Safety Department[5]); Supplemental Exhibit V (Waste Manifest Record indicating that McDermott tracked hazardous waste at the facility in 1987).

Citing *Central States*, McDermott argues that all of its involvement in the Facility constituted "a perfectly allowable sharing of corporate services" that does not lead to this Court having personal jurisdiction over it. However, in so arguing McDermott conflates the issue of whether it is subject to jurisdiction based upon its corporate affiliation with B&W and the issue of whether McDermott's involvement with the facility was such that it supports a finding of specific personal jurisdiction in this case. The holding in *Central States* was that "a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction." 230 F.3d at 945.

> The basis for this proposition is much the same as for the more general principle that jurisdiction over a parent cannot be based merely on jurisdiction over a subsidiary. Parent corporations regularly provide certain services to their subsidiaries. Such parents do not expect that performing these activities may subject them to liability because of the actions of the subsidiaries. Thus, such standard services are not sufficient minimum contacts to support the exercise of jurisdiction.

---

[5] The document itself does not indicate that the author of the report was an employee of McDermott, but Mitchel so asserts and McDermott does not dispute the assertion.


*Id.* In *Central States*, the evidence demonstrated that the subsidiary had paid the parent for the consulting services of one of the parent's employees and that the actions in question by that employee were taken at the direction of the subsidiary, not the parent. *Id*. at 946. While it is certainly possible that such an arrangement existed in this case, there is no evidence to that effect. Rather, drawing all reasonable inferences in favor of Mitchel, the Court determines that Mitchel has made a prima facie showing that environmental matters at the Facility were handled by McDermott from the beginning of B&W's operation of the facility through and even after the end of it.[6] Therefore, Mitchel has made the requisite prima facie showing that McDermott "purposefully availed itself of the privilege of conducting activities" in Indiana and that exercising personal jurisdiction over McDermott in this case, which directly relates to those activities, "would comport with traditional notions of fair play and substantial justice." McDermott's motion to dismiss therefore is denied.

This is only a preliminary determination, however. McDermott is entitled to have the issue of personal jurisdiction decided based upon an evidentiary hearing, not simply inferences drawn from documents. If McDermott wishes to request an evidentiary hearing, it shall so move **within 30 days of the date of this Entry**. If Mitchel believes it needs to conduct additional jurisdictional discovery prior to the hearing, it shall so move **within 15 days of the date of McDermott's motion**. The Court will then ask Magistrate Judge Baker to conduct a pretrial conference to establish an appropriate schedule for discovery and briefing prior to the hearing.

---

[6] The Court recognizes that McDermott has submitted the affidavit of Ronald Hafner in which he states that he is "not aware of any active participation by McDermott in any waste management functions at the property" or "of McDermott exercising control over any acts that led to the alleged contamination of the Property." The conflict between this affidavit and the documents submitted by Mitchel must be resolved in favor of Mitchel at this stage of the proceedings.

SO ORDERED: 2/3/09

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to:

Howard Walton Anderson , III
Ice Miller LLP
howard.anderson@icemiller.com,shawn.lantz@icemiller.com

Fred R. Biesecker
Ice Miller LLP
fred.biesecker@icemiller.com

Eric J. Essley
Hatchett & Hauck LLP
eric.essley@h2lawyers.com,miya.evans@h2lawyers.com

Norman T. Funk
Hill Fulwider McDowell Funk & Matthews
tom@hfmfm.com,sandy@hfmfm.com

Lisa McKinney Goldner
Bose McKinney & Evans, LLP
lgoldner@boselaw.com

David L. Hatchett
Hatchett & Hauck LLP
david.hatchett@h2lawyers.com

H. Roderic Heard
Wildman Harrold Allen & Dixon
heard@wildman.com,ecf-filings@wildman.com,bella@wildman.com

Matthew T. Klein
Bose McKinney & Evans, LLP
mklein@boselaw.com

Brent W. Huber
Ice Miller LLP
brent.huber@icemiller.com,elizabeth.yates@icemiller.com

Angela Pease Krahulik
Ice Miller LLP
krahulik@icemiller.com

Andrew M. McNeil
Bose McKinney & Evans, LLP
amcneil@boselaw.com,mschulz@boselaw.com,kschuster@boselaw.com

Bradley J Schulz
Goodin Abernathy LLP
bschulz@gamlawyers.com,jcarbaugh@gamlawyers.com

Heath E. Uppencamp
Krieg Devault LLP
huppencamp@kdlegal.com,kcarter@kdlegal.com

Vicki J. Wright
Krieg Devault LLP
vwright@kdlegal.com

Robert D. Zink
Goodin Abernathy LLP
rzink@gamlawyers.com,jcarbaugh@gamlawyers.com

8